UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
FILE NO. 5:05-CR-159-1-H
FILE NO. 5:06-CR-17-1-H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | ***SENTENCING MEMO*** |
| ) | |
| TONY GARCIA, ) | |
| ) | |
| Defendant. ) | |

NOW COMES the Defendant ("Tony"), by and through the undersigned counsel, who does hereby submit this Sentencing Memorandum in regard to his June 5, 2006, sentencing.

ISSUES TO BE LITIGATED AT SENTENCING HEARING

*1. Assignment of two criminal history points to the 2000 robbery conviction.*

The criminal history section of the Presentence Report (PSR) assigns two points to a 2000 state court conviction for strong armed robbery. Although Tony was not sent to jail or prison in the case, he participated in a boot camp as part of his punishment. The PSR contends that going to boot camp is the same as going to jail or prison; as a result, the conviction receives two points as a "sentence of imprisonment" under Guideline 4A1.1(b), rather than one point under Guideline 4A1.1(c) for a non-imprisonment prior conviction.

Tony contends that boot camp is *not* the same as jail or prison and that the sentence should receive only one criminal history point. The undersigned's research has

revealed no Fourth Circuit decision addressing the issue. Admittedly, a person in boot camp is subject to restrictions on his liberty. But boot camp is generally seen as an alternative to jail or prison, that is, as a non-jail and non-prison sentence. Accordingly, Tony contends that it does not qualify as a sentence of imprisonment and that it should receive only one criminal history point under Guideline 4A1.1(c).

In addition, Tony contends that the rule of lenity should cause the court to assign only one criminal history point to the conviction.

> [A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity, and [ ] when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.

*Jones v. United States*, 529 U.S. 848, 858 (2000) (citations and internal quotes omitted). Tony contends that the same rule should apply in interpreting the Guidelines: when making the choice as to whether boot camp is a sentence of imprisonment, it is appropriate to require clear and definite language in the Guidelines before choosing the harsher alternative. Given the absence of any such language in the Guidelines and the absence of any controlling decision from the Fourth Circuit, Tony contends that the court should choose the more lenient alternative, which would be treating his prior conviction as a non-imprisonment sentence under Guideline 4A1.1(c).

Granting the objection will reduce the four criminal history points shown in the PSR to three points. It will also move him from criminal history category III to II, changing the Guideline range from 235-293 months to 210-262 months.

*2. Criminal History Category III overrepresents the seriousness of the criminal history.*

In the event the court denies the first objection, Tony contends that category III substantially overrepresents his criminal history. He has four criminal history points from only one conviction: two from the conviction itself and two from being on probation for the conviction at the time of the current offense. He is at the bottom of end of category III; three points would put him in category II.

Tony is being assigned the same criminal history category as someone with two prior felony convictions which were sentences of imprisonment. Such a person would receive three points for each conviction, giving him a total of six points and putting him in category III with Tony. A downward departure in this situation is expressly permitted by Guideline 4A1.3(b)(1): "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . . ., a downward departure may be warranted." Tony asks the court to apply this provision to his case and to assign him to category II.

*3. Tony should receive a mitigating role for being a "mule."*

Tony is being sentenced for his participation in two federal drug cases: one from Texas and one from North Carolina. In both cases, Tony was stopped while driving a car that was later determined to contain drugs. Also in both cases, he was driving the vehicle for someone else, having agreed to make a delivery of the drugs. Under these facts, the Guidelines suggest that Tony should be given a mitigating role adjustment under Guideline 3B1.2

Application note 3(B) in particular gives an example of facts that call for a mitigating role adjustment: "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to transporting or storing drugs and who is accountable under 1B1.3 only for the quantity of drugs the defendant personally transported or stored is not precluded from consideration for an adjustment under this guideline."

Tony's drug quantity as shown in the PSR is the amount of drugs that he was transporting when he was stopped by law enforcement. As such, he is accountable only for the quantity of drugs he personally transported. As shown above, his role in the offenses was limited to transporting the drugs. He satisfies the criteria for a mitigating role adjustment.

Tony does not contend that he qualifies for a minimal role adjustment, which applies only to those defendants who are "plainly among the least culpable of those involved in the conduct of a group" under application note 4 to Guideline 3B1.2. He does contend, however, that he qualifies as a minor participant, someone "who is less culpable than most other participants, but whose role could not be described as minimal," per application note 5.

With the mitigating role, Tony will receive a two-level reduction in his offense level under Guideline 3B1.2(b) and a three-level reduction under Guideline 2D1.1(a)(3). His total offense level will drop from 36 to 31, and his Guideline range (with criminal history category II) will be 121-151 months, rather than 235-293 months as shown in the PSR.

*4. Tony should receive a traditional departure and/or a variance at sentencing.*

As shown by the Letter of Commendation attached hereto as Exhibit A, Tony helped save the life of a fellow inmate at the Pitt County Detention Center on March 3, 2006. The inmate had tied a sheet around his neck and declared that he was going to jump from an upper balcony the jail. Tony and another inmate acted "[a]t some personal risk" and "made it impossible for him to jump." Tony was commended for his actions by Major Tim Copeland, the Chief of Detention Services for the Pitt County, North Carolina, Sheriff's Office. Tony asks the court to use this factor, along with the 87-month sentence received by his codefendant, to grant a departure and/or a variance at sentencing.

In the post-*Booker* sentencing world, the court must go through several steps in any sentencing hearing. First, the court determines the Guideline range. Second, the court decides whether the Guideline range satisfies the factors in 18 U.S.C. 3553(a). If it does not, the court can adjust the sentence, either with a traditional departure or with a variance. A traditional departure is a sentence adjustment based upon a provision of the Guidelines or upon relevant case law. A variance is a sentence adjustment based on factors that are not traditional departures but which the court nevertheless finds to be appropriate based upon the factors listed in 18 U.S.C. 3553(a). *See United States v. Moreland*, 437 F.3d 424, 432-33 (4th Cir.), *cert. denied*, --- U.S. ---, 2006 WL 1022030 (2006).

As of the date of submitting this Sentencing Memo, Tony cannot know the Guideline range that the court will ultimately adopt at sentencing. If the court grants his objections and adopts a range of 121-151 months for the reasons shown above, then Tony

5
Case 5:05-cr-00159-H   Document 78   Filed 05/29/06   Page 5 of 10

will have a weaker argument for a traditional departure or for a variance. In the event the court sets a higher sentencing range, however, Tony will have a stronger argument for a departure or a variance. In the spirit of hoping for the best but planning for the worst, Tony will argue for the departure and variance in this Memo but may withdraw the argument at sentencing, depending on the court's ruling on the Guideline range.

Tony contends that two factors in 18 USC 3553(a) warrant a departure and/or a variance in his sentence: the "characteristics of the defendant" under (a)(1) and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" under (a)(6). To be sure, Tony deserves to be punished for his conduct, and his sentence must reflect the seriousness of his offenses as well as appropriate deterrence, per the other 3553(a) factors. But even a sentence to the statutory minimum of ten years is a serious sentence. The question then becomes: how far above the minimum should the court go to satisfy 3553(a)'s call for a sentence that is "sufficient, but not greater than necessary?"

Tony could have walked away from his fellow inmate at the jail and could have allowed him to follow through on his threat to kill himself. If Tony had done so, he would have been acting within the bounds of the law, as there is no legal duty to help someone in distress. But Tony felt compelled by morality and decency to do something to help the man. As a result, at some personal risk to himself, Tony took action to help a fellow human being.

The Government may argue that if Tony truly had a sense of morality and decency, he would have avoided any involvement with illegal drugs. Fair enough, but only to a point. As inconvenient as it may be for the Government, a person who acts

badly in one area of his life is not necessarily a "bad person," especially when he acts in an exemplary fashion in another area. As Aleksandr Solzhenitsyn once said, "The universal dividing line between good and evil runs not . . . between good and bad men: the dividing line cuts across nations and parties, shifting constantly. . . . It divides the heart of every man." The line runs through Tony's heart, as it does through everyone's. It is the Government's job to point out the bad, the defense's job to point out the good, and the court's job to balance it all with an appropriate sentence.

In legal terms, the court can give Tony a traditional departure by finding that his conduct in saving the life of a fellow inmate is a factor that could not be foreseen by the Sentencing Commission and thus it takes Tony's case outside the "heartland" of normal cases under Guideline 5K2.0. It is not a prohibited factor under the Guidelines, and it falls within the category of a circumstance which "has not adequately been taken into consideration in determining the applicable Guideline range" under 5K2.0(a)(2)(A). Alternatively, it falls within the category of a circumstance "that the Commission has not identified in the guidelines but that nevertheless is relevant to determining the appropriate sentence" under 5K2.0(a)(2)(B).

The court could instead find that while it is not the basis for a traditional departure, it is evidence of a "characteristic of the defendant" that warrants a variance sentence under 18 U.S.C. 3553(a)(1). The other variance factor would be avoiding unwarranted sentence disparities among codefendants under 3553(a)(6). Tony's codefendant and half-brother, Angel Balart, also pled guilty, and he received a sentence of 87 months on May 2, 2006. To be sure, he pled guilty only to one incident in which he transported cocaine. Tony pled guilty to two. Even if Tony's sentence should be

doubled, however, it still warrants a sentence of only 174 months in comparison with his brother. The court has the authority to vary from the Guideline sentence based on these specific, enumerated factors, and Tony asks the court to exercise that authority at sentencing.

*5. Other issues of note*

Tony will ask the court at sentencing to recommend that he participate in the drug treatment program. Tony also hereby submits to the court the character letters attached as Exhibit B.

PRESERVATION ISSUES

For the record, Tony makes the following objections in regard to his upcoming sentencing. These objections are made to preserve the record. Tony recognizes that the current state of the law is against him on these points:

- Tony objects to the use of his prior convictions to increase his sentencing range under the United States Sentencing Guidelines and/or to increase the ultimate sentence imposed on him by the court. Tony contends that because the existence of the prior convictions was not admitted in the plea agreement and was not proven to a jury, use of the convictions violates his Sixth Amendment right to a trial by jury as explained in *United States v. Booker*, 543 U.S. 220 (2005).

- Tony objects to any finding that a sentence within the Guideline range is a "presumptively reasonable" sentence as stated by the United States Court of

Appeals for the Fourth Circuit in *United States v. Johnson,* 445 F.3d 339 (4th Cir. 2006). Tony contends that use of the Guidelines in this fashion violates his Sixth Amendment right to a trial by jury and that it is inconsistent with the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005).

- Tony objects to any increase in his sentence that is based on the finding of facts that were not alleged in the indictment and either proven to the jury or admitted by Tony as part of his plea agreement. Tony contends that such factfinding and sentence enhancement violates his Sixth Amendment right to trial by jury and also his Fifth and Fourteenth Amendment rights to substantive and procedural due process of law. In particular, Tony objects to the court making findings that he participated in an attempted escape, given that the offense was never charged against him in any criminal pleading and also given that he has never pled guilty to any such offense.

This the 29th day of May, 2006.

                         LAW OFFICES OF KEITH A. WILLIAMS, P.A.

             By:    /s/ Keith A. Williams
                     KEITH A. WILLIAMS
                     P.O. Box 1965
                     321 South Evans Street, Suite 103
                     Greenville, NC 27835
                     Phone: 252/931-9362
                     Fax: 252/830-5155
                     N.C. Bar Number 19333
                     E-mail: kwlaw@earthlink.net

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following: Assistant United States Attorney Winnie Reaves.

This the 29th day of May, 2006.

                                        LAW OFFICES OF KEITH A. WILLIAMS, P.A.

                        By:    /s/ Keith A. Williams
                               KEITH A. WILLIAMS
                               P.O. Box 1965
                               321 South Evans Street, Suite 103
                               Greenville, NC  27835
                               Phone:  252/931-9362
                               Fax:  252/830-5155
                               N.C. Bar Number 19333
                               E-mail:  kwlaw@earthlink.net